708 A.2d 728

MICHAEL F. REILLY, SUSAN SELIGMAN, HERBERT LAUFER, JOSE TEJEDOR, TOM HUARTE, JANET HUARTE, EUGENE EHRLICH, KATHY MORENO, HANK STOHR, IRA STRAUSS, BERNARD PETERSON, ILDA I. HUGUET, MAX BENDER, MAY BENDER, LOUIS BOLOGNINI, JANET CARP, SAMUEL CO-HEN, MORRIS CROWE, KEFF I. DANK, ROSE PALMER DUR-HAM, DOROTHY CONTE FINNEGAN, ELEANORE HADLEY, HELEN KING, JAMES MCDOWELL, MARILYN MESSER, ALAN MILROY, RONALD MILROY, MAURICE S. MURRAY, PAULINE S. NEVIN, MARIA T. PACE, FANNY MARCHESE REYES, ELAINE SATTLER, SHELDON SATTLER, BARRY SCHWARTZ, JOSEPH SCHWARTZ, JUDITH FRISCHER, NA-THAN SIVERSTEIN, MARIA A. WATSON, BOB ZWITI, ALEX-ANDER LOCATELLI, JOSEPH ERSKINE, BERNARD J. FEVRI-ER, BAE SCHWARTZ, MYRON J. HALLAK, ROBERTO ACIAR, PERLA ROZENCVAIG, KATHRYN STELLMACK, MORTON E. KAHN, AND EDNA M. GORBLEY, PLAINTIFFS–APPELLANTS, v. RIVIERA TOWERS CORPORATION, A NEW JERSEY CO-OPERATIVE, AND C & R REALTY AND MANAGEMENT CO., INC., DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 17, 1998—Decided March 27, 1998.

Before Judges PETRELLA, EICHEN and STEINBERG.

*Michael F. Reilly* argued the cause for appellants.

*Daniel B. Carroll* argued the cause for respondents (*Shanley & Fisher*, attorneys; *Mr. Carroll, Stephen R. Long*, and *Stacey P. Rappaport*, on the brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

This appeal arises from a dispute between the plaintiffs, owner-renters of various cooperative units and Riviera Towers Corporation, the cooperative corporation (Riviera), regarding Riviera's authority to impose a sublet privilege fee. Riviera's cross-motion for summary judgment was granted and the complaint[1] was dismissed with prejudice.

Plaintiffs argue that (1) Riviera's Board of Directors (Board) lacked authority to enact the subleasing policy; (2) the subleasing policy had to be approved by two-thirds of Riviera's shareholders; (3) the proprietary lease and bylaws do not authorize sublease fees; (4) unilateral imposition of a sublet privilege fee by the Board without approval by two-thirds of the existing shareholders improperly restricts the shareholders' power to authorize a sublet without any conditions attached; (5) the sublet privilege fee violates the Cooperative Recording Act; and (6) summary judgment against them was inappropriate.

On December 15, 1972, Riviera, a New Jersey cooperative corporation, purchased the apartment building known as Riviera Towers in West New York, New Jersey, and converted it to cooperative status with the former apartments now considered units. The corporation's shareholders hold proprietary leases to the 427 apartment units within Riviera Towers in addition to owning voting shares of stock[2] in the corporation. Defendant C

---

[1] Plaintiffs' complaint alleged that the sublet privilege fee adopted by Riviera's Board of Directors, was an unconstitutional deprivation of their property rights; was unreasonable and arbitrary in that it created a limited class from which extraordinary payment was required; unjustly enriched certain class owners; was confiscatory; interfered with the contractual agreement between plaintiffs and their tenants; violated the Cooperative Recording Act of New Jersey, *N.J.S.A.* 46:8D–1 to –18, and denied all unit-owners the fair market value of their apartments (now known as units). The complaint also alleged that Riviera applied a bylaw retroactively to existing unit owners and failed to exercise good business judgment in passing the bylaw.

[2] As we noted in *Presten v. Sailer*, 225 *N.J.Super.* 178, 185–189, 542 *A.2d* 7 (App.Div.1988), cooperatives are a hybrid form of ownership and the stock does

& R Realty and Management Co. is the property manager for Riviera.

Riviera is managed by a Board of Directors consisting of seven elected members who serve for staggered three year terms. The Board is empowered to manage Riviera Towers and "adopt [ ] rules and regulations for the ... management of the affairs of the Corporation...." Riviera's shareholders agreed to be bound by the bylaws.

In 1992, the Board adopted a subleasing policy affecting shareholders who purchased a cooperative unit after October 1, 1992, to the effect that shareholders could not rent their units until they resided therein for twenty-four consecutive months. Upon expiration of that period, shareholders could rent the unit for a maximum twenty-four month period.

According to Riviera's Board, this subleasing policy was adopted because of difficulty in securing secondary financing to supplement or supplant Riviera's existing mortgage financing on the building. Reliance for this claim is premised upon newspaper articles in the record to the effect that banks were unwilling to lend money to co-op buyers in buildings that contained less than 50–75% owner-occupied units. Riviera asserts that this 1992 subleasing policy was intended to force owners to occupy their units instead of renters, and that the value of the building and the individual units is directly related to the number of owner-occupied units. The Board's claim is that as owners occupy more units, the value of the units and building increases. Plaintiffs counter that this is not the case and that refinancing has not been impeded.

In March 1994, the Board appointed a committee to redraft its 1992 policy. In December 1994, the Board voted 6 to 1 to accept the new subleasing policy which provided that no current share-

---

not have all the characteristics of ordinary corporate shares. The stock is restricted stock and the number of shares owned by each unit owner apparently is based on the amount paid for the unit.

holder, or person purchasing a unit after the effective date of that policy, would be allowed to sublet that unit until the shareholder had owned it for two years. In addition, "all shareholders must pay a monthly sublet privilege fee (SPF) to the corporation for each unit that is sublet on or after [December 15, 1994], including new subleases as well as any existing sublease which a shareholder seeks to renew." The SPF included a $10 per month flat fee plus $.10 per share per month for the first twelve months with a ten cent increase per share per month for each additional year (*i.e.*, $.20 per share per month plus $10 per month flat fee for second year).

## I.

The propriety of a sublet privilege fee in the context of a cooperative housing agreement is not the subject of any reported New Jersey case. Nevertheless, our opinion in *Sulcov v. 2100 Linwood Owners,* 303 *N.J.Super.* 13, 30, 696 *A.*2d 31 (App.Div.), *certif. granted,* 152 *N.J.* 10, 702 *A.*2d 349 (1997), provides guidance. There we stated that "the relationship between a cooperative and its shareholders should be determined by its Certificate, by-laws, and proprietary lease and that the documents must be read together." *Id.* at 30, 696 *A.*2d 31. Moreover, absent controlling New Jersey precedent we may also consider out of state cases. *Ibid.*

 Subject to the certificate of incorporation,[3] the proprietary lease and the bylaws, the Board has the power to adopt rules and regulations for the management of the Corporation. The proprietary lease contains the following sublet clause which the Board relies on as authority for its sublease conditions:

(A) The Lessee shall not sublet the whole or any part of the apartment for any term to any person or persons without the Lessor's written consent, authorized by a resolution of the Board of Directors, or signed by a majority of the directors, or

---

[3] The certification of incorporation is not in the record.

by lessees owning of record at least a majority of the capital stock of the Lessor then issued and outstanding and accompanying proprietary leases then in force.

Plaintiffs argue that the quoted sublet clause in Riviera's proprietary lease does not authorize the Board to impose conditions on subletting. Riviera argues that the prohibition against subleasing impliedly grants power to impose an SPF. Additionally, it argues that the general grant of power to act in the best interests of the Corporation gives the Board the authority to impose a sublet privilege fee.[4] We disagree.

Neither the proprietary lease nor the bylaws expressly permit the Board of Directors to impose a sublet privilege fee. *Zimiles v. Hotel Des Artistes, Inc.*, 216 A.D.2d 45, 627 N.Y.S.2d 382, 382–383 (App.Div.1995). Moreover, neither the proprietary lease nor the bylaws expressly state that "subletting may be subject to such conditions as the directors ... may impose." *Cf. Rakowsky v. Excelsior 57th Corp.*, 167 Misc.2d 476, 635 N.Y.S.2d 920, 922 (N.Y.City Civ.Ct.1995) (broad quoted language construed by New York court to permit a sublet fee); *Zuckerman v. 33072 Owners Corp.*, 97 A.D.2d 736, 468 N.Y.S.2d 639, 640 (App.Div.1983) (board had authority to impose reasonable fee); *McCabe v. Hoffman*, 138 A.D.2d 287, 526 N.Y.S.2d 93, 94 (App.Div.1988). In addition, neither the bylaws nor the proprietary lease expressly permit the Board to establish a "reasonable fee to cover actual expenses" as the bylaws so stated in *Bailey v. 800 Grand Concourse Owners*,

---

[4] Defendant argues that we should defer to the Board's discretion to impose such a fee based on the business judgment rule. In *Sulcov v. 2100 Linwood Owners, supra* (303 N.J.Super. at 31, 696 A.2d 31), discussing the contention that the business judgment rule justifies defendants' decision to impose transfer or "flip" fees, we stated:

> The business judgment rule bars judicial inquiry into the decisions of the board of directors made in good faith. *See Maul v. Kirkman*, 270 N.J.Super. 596, 614, 637 A.2d 928 (App.Div.1994). *However that rule applies where the board is authorized to make the decision.* The business judgment rule does not apply to decisions that are beyond the limits of the by-laws. (emphasis added).

Here, the Board's decision need not be accorded the benefit of the business judgment rule where the Board is not authorized under its governing documents to impose a sublet privilege fee.

*Inc.*, 199 *A.D.*2d 1, 604 *N.Y.S.*2d 562, 563 (App.Div.1993). Also, the proprietary lease here reserves to the shareholders the right to override the Board's denial of a sublease. *Cf. Kelley v. Broadmoor Cooperative Apartments*, 676 *A.*2d 453, 455 (D.C.App. 1996). *And see N.J.S.A.* 14A:2–9.

Riviera's proprietary lease expressly conditions subleasing approval upon Riviera's written consent "authorized by a resolution of the Board of Directors, or signed by a majority of the directors, or by lessees owning of record at least a majority of the capital stock of the Lessor then issued and outstanding and accompanying proprietary leases then in force." The Board does not have complete discretion over subletting privileges because a majority of the stockholders can approve a sublease without any action from the Board.[5]

From this it can be seen that the proprietary lease gives the shareholders the right to authorize a sublease independent of the Board. The plain language of the lease, which is the contract here, does not give the Board the power to impair or dilute that right given to the shareholders by imposing unauthorized conditions, including sublet fees. Nor is such authority readily implied from the sublease approval provision. In order to impose a condition on the right to approve sublets, absent an amendment to the bylaws, such authority must be in the governing documents.[6]

---

[5] Even assuming cooperative "ownership" equates to ordinary landlord-tenant principles, consent to a lease or sublease is arguably subject to the requirement that it will not unreasonably be withheld. *See Jonas v. Prutaub Joint Venture*, 237 *N.J.Super.* 137, 140, 567 *A.*2d 230 (App.Div.1989), *certif. denied*, 121 *N.J.* 628, 583 *A.*2d 324 (1990). *See also Krieger v. Helmsley–Spear, Inc.*, 62 *N.J.* 423, 424, 302 *A.*2d 129 (1973); *Muscarelle v. Castano*, 302 *N.J.Super.* 276, 281, 695 *A.*2d 330 (App.Div.1997). *See also Carma Developers v. Marathon Development California, Inc.*, 2 *Cal.*4th 342, 6 *Cal.Rptr.*2d 467, 472, 826 *P.*2d 710, 715 (1992); *cf. Drew Associates of N.J., L.P. v. Travisano*, 122 *N.J.* 249, 263, 584 *A.*2d 807 (1991); *Sommer v. Kridel*, 74 *N.J.* 446, 455, 378 *A.*2d 767 (1977).

[6] Compare *N.J.S.A.* 14A:2–9 and *N.J.S.A.* 15A:2–10.

Since such language is absent here, Riviera's ability to impose a sublet privilege fee is contingent upon appropriate stockholder approval and compliance with the lease. *Cf. Zimiles v. Hotel Des Artistes, Inc., supra* (627 *N.Y.S.*2d 382). Thus, the condition imposed by the Board is unenforceable.

## II.

Since neither the proprietary lease nor the bylaws grant the Board the power to impose a sublet privilege fee we need not address plaintiffs' remaining arguments.

Accordingly, the order granting summary judgment to Riviera and dismissing plaintiffs' complaint is reversed and the matter is remanded to the Chancery Division for further proceedings consistent with this opinion.